UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61078-ALTMAN/STRAUSS

**COLLISION CARE XPRESS MCNAB, LLC,**

    Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [DE 27], which has been referred to me for a report and recommendation [DE 36]. I have reviewed the Motion, the Response [DE 30] and Reply [DE 31] thereto, and the Amended Complaint [DE 20]. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 27] be **GRANTED IN PART and DENIED IN PART**.

**BACKGROUND**[1]

Plaintiff is an automobile repair shop. Amended Complaint ¶ 6. Defendant is an insurance company. *Id.* ¶ 5. Certain of Plaintiff's customers are insured by Defendant. *Id.* Until September 8, 2020, Plaintiff and Defendant had a written agreement. *Id.* ¶ 7. Although Defendant terminated that agreement in or around September 2020, the parties continued to conduct business with each other. *Id.* Following the termination of the agreement, Plaintiff expected and understood that it

---

[1] For purposes of considering the Motion, I accept the factual allegations in the Amended Complaint as true and view them in the light most favorable to Plaintiff. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019).

would be reimbursed by Defendant based upon standard industry rates for work performed on vehicles of Defendant's insureds. *See id.* ¶¶ 9-12. Defendant was aware of Plaintiff's expectation and understanding. *Id.* ¶¶ 12, 16.

Between 2021 and 2023, Plaintiff repaired vehicles of numerous customers insured by Defendant. *See id.* ¶¶ 21, 24 & Ex. A. For 69 vehicles that Plaintiff repaired, it has received some payment – from the customer and/or Defendant – but it has not received the full amount that it asserts it is owed (the amount that it asserts it expected and understood it would be paid). *See id.* ¶¶ 21, 24, 26 & Ex. A. Plaintiff alleges that it is owed a balance of $306,716.47. *Id.* ¶¶ 27-28 & Ex. A. Because no express contract existed between Plaintiff and Defendant in connection with these repairs, Plaintiff brings a breach of implied contract claim against Defendant (in Count I of the Amended Complaint). Although the Amended Complaint does not specify whether Count I is based upon an implied-in-fact or implied-in-law contract, Plaintiff confirms in its Response to the Motion that it is pursuing an implied-in-law contract claim (i.e., an unjust enrichment claim).[2]

Plaintiff also brings a tortious interference claim against Defendant (in Count II of the Amended Complaint). That claim is premised upon Defendant allegedly "steering" at least three customers away from Plaintiff. The facts relevant to Count II are discussed in further detail in Part C of the Analysis section below.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not

---

[2] "Florida courts have synonymously used a number of different terms to describe an unjust enrichment cause of action, including 'contract implied in law,' 'quasi contract,' 'constructive contract,' and 'quantum meruit.'" *Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 280 n.1 (Fla. 4th DCA 2023) (citing *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)).

2

require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). When a claim sounding in fraud is alleged, the complaint "must satisfy the heightened pleading standard embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted). To do so, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted). "'However, alternative means are also available to satisfy the rule' as long as the defendants receive 'fair notice' of the bases for the claims against them." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1281 (S.D. Fla. 2021) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th

3

Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).[3] Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

In the Motion, Defendant argues that both counts of the Amended Complaint should be dismissed. Preliminarily, Defendant contends that the Amended Complaint should be dismissed as a shotgun pleading. Defendant then raises various arguments for dismissal under Rule 12(b)(6). As discussed herein, while I disagree with Defendant's shotgun pleading arguments and arguments for dismissal of Count II, I agree with Defendant that Count I should be dismissed.

### A.  SHOTGUN PLEADING

The Amended Complaint is not a shotgun pleading. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry

---

[3] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments." (citation omitted)).

4

all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) "a complaint that does not separate 'each cause of action or claim for relief' into a different count"; and (4) a complaint asserting "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1321-23). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

First, Defendant argues that Count I of the Amended Complaint falls into the second shotgun-pleading category.[4] According to Defendant, paragraph 14 of the Amended Complaint cites to an irrelevant statute, and paragraphs 17 and 18 "contain vague allegations irrelevant to the claims asserted." [DE 27] at 5-6; *see also* [DE 31] at 8. Even assuming paragraphs 14, 17, and 18 are irrelevant or vague (or both), Defendant's argument is meritless. That is because the second shotgun-pleading category encompasses a complaint "*replete with* conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Barmapov*, 986 F.3d at 1325 (emphasis added).[5] A pleading that contains three vague or immaterial allegations is not a pleading that is *replete with* such allegations.

---

[4] In the Motion, Defendant also argues that Count I violates the prohibition against shotgun pleadings for an additional reason. *See* [DE 27] Part II.A. However, Defendant acknowledges in its Reply that its argument in Part II.A of the Motion is moot. *See* [DE 31] at 8.

[5] In the Motion, Defendant conveniently changes the words "replete with" to "contains" in attempting to argue that the Amended Complaint falls into the second shotgun-pleading category.

Second, Defendant contends that Count II also renders the Amended Complaint a shotgun pleading. It is unclear why Defendant contends Count II violates the shotgun pleading rule. For instance, Defendant does not assert that Count II falls into any of the four shotgun-pleading categories, and Count II clearly does not. Rather, with respect to Count II, Defendant merely states that "Plaintiff's failure to allege appropriate detail renders its Amended Complaint a shotgun pleading." [DE 27] at 7. Defendant seems to imply that the "detail" Plaintiff was required to provide was the names of all of the customers Defendant allegedly steered away from Plaintiff. *See id.* Without such detail, Defendant seems to imply that Plaintiff has not provided adequate notice of the grounds upon which Plaintiff's tortious interference claim rests. *See id.* For the reasons discussed in Part C below, Defendant's argument fails.

**B. COUNT I (Unjust Enrichment)**

A party pursuing an unjust enrichment claim under Florida law must establish the following elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (citing *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)). Significantly, "to prevail on an unjust enrichment claim, the plaintiff must *directly* confer a benefit to the defendant." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)) (emphasis added); *see also Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) ("[A]s to the first element, the benefit conferred on the defendant must be a direct benefit."); *Chiquita Fresh*, 372 So. 3d at 280-81 ("It is well-established that to support an

6

unjust enrichment claim, a plaintiff must have *directly* conferred a benefit on the defendant. The Florida Supreme Court made this clear in *Kopel* . . . ."). In other words, the conferral of an "indirect" benefit cannot satisfy the first unjust enrichment element. *Marrache*, 17 F.4th at 1102.

Defendant argues that Count I should be dismissed with prejudice because – even under the applicable Rule 12(b)(6) standard – Plaintiff did not confer a benefit upon Defendant as a matter of law.[6] I agree – at least that Plaintiff did not confer the requisite *direct* benefit on Defendant. Thus, the Amended Complaint fails to (and cannot) plausibly allege that the first unjust enrichment element is satisfied.

It is not entirely clear what benefit Plaintiff alleges it conferred on Defendant. Plaintiff does allege Defendant benefits from payments made by Defendant's insureds. Amended Complaint ¶ 25. Of course, that is not a benefit that Plaintiff conferred on Defendant. Plaintiff does, however, proceed to allege that it conferred a benefit on "Defendant's insureds for which the Defendant was paid money . . . ." *Id.* ¶ 29. The benefit Plaintiff conferred is the repair work Plaintiff performed on the insureds' vehicles. *See id.* However, Plaintiff's repair work only *directly* benefitted the insureds, not Defendant. In other words, any allegation that Plaintiff conferred a *direct* benefit *on Defendant* by repairing the vehicles of customers insured by Defendant is simply implausible.

Notably, cases in this district have overwhelmingly held – in an analogous context – that health insurance companies receive no more than an *indirect* benefit when healthcare providers treat patients insured by those insurance companies.[7] Although a few cases in this district have

---

[6] Defendant also briefly argues that Count I should be dismissed for two additional reasons (which I do not reach), but Defendant's primary argument pertains to the first unjust enrichment element (conferral of benefit).

[7] *See Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1267-68 (S.D. Fla. 2023); *S. Broward Hosp. Dist. v. ELAP Servs., LLP*, No. 20-61007-CIV, 2023 WL

7

noted a split of authority on the issue, even judges in this district who previously denied motions to dismiss on the issue have since reconsidered and have instead held, after further consideration of the issue and intervening case law, that dismissal is appropriate when an unjust enrichment claim is premised upon a healthcare provider conferring a benefit on the insurance company by providing services to one insured by that company.[8]  The same logic holds true here, where Plaintiff alleges it repaired vehicles of the customers insured by Defendant.

Consequently, viewed in the light most favorable to Plaintiff, the allegations of the Amended Complaint demonstrate the conferral of a *direct* benefit on the customers and an *indirect* benefit on Defendant.  Because Plaintiff conferred no more than an *indirect* benefit on Defendant, Count I should be dismissed with prejudice.

---

6547748, at *11 (S.D. Fla. Sept. 30, 2023); *Neurosurgical Consultants of S. Fla., LLC v. UnitedHealthcare Ins. Co.*, No. 22-81428-CIV, 2023 WL 3157504, at *5 (S.D. Fla. Apr. 27, 2023); *Vanguard Plastic Surgery, PLLC v. Aetna Life Ins. Co.*, No. 0:22-CV-61853-WPD, 2023 WL 3171963, at *10-11 (S.D. Fla. Mar. 27, 2023); *Neurosurgical Consultants of S. Fla., LLC v. United Healthcare Servs., Inc.*, No. 9:22-CV-81727-KAM, 2023 WL 2487257, at *7 (S.D. Fla. Feb. 21, 2023); *Vanguard Plastic Surgery, PLLC v. Cigna Health & Life Ins. Co.*, No. 0:22-CV-61086-WPD, 2023 WL 2168513, at *5-6 (S.D. Fla. Jan. 18, 2023); *Vangaurd Plastic Surgery, PLLC v. UnitedHeatlhcare Ins. Co.*, No. 21-62403-CIV, 2022 WL 19037216, at *3-4 (S.D. Fla. Feb. 9, 2022); *N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*, No. 1:20-CV-24914-KMM, 2021 WL 3419356, at *5 (S.D. Fla. May 10, 2021); *GVB, LLC v. Cigna Health Ins. Co.*, No. 19-CV-21373, 2020 WL 13880660, at *2 (S.D. Fla. Mar. 18, 2020); *Gov't Emps. Ins. Co. v. Cereceda*, No. 19-22206-CIV, 2020 WL 13220422, at *6 (S.D. Fla. Mar. 13, 2020); *Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, No. 17-61840-CIV, 2020 WL 13551296, at *7 (S.D. Fla. Jan. 17, 2020); *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6-7 (S.D. Fla. Nov. 19, 2019); *GVB MD, LLC v. United Healthcare Ins. Co.*, No. 19-20727-CIV, 2019 WL 5260274, at *4 (S.D. Fla. Aug. 14, 2019), *report and recommendation adopted*, 2019 WL 5260178 (S.D. Fla. Sept. 5, 2019).

[8] *Compare Vanguard Plastic Surgery*, 2023 WL 3171963, at *10-11, *with Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1302 (S.D. Fla. 2021); *see also Cereceda*, 2020 WL 13220422, at *5 n.12.

### C. COUNT II (Tortious Interference)

The allegations of the Amended Complaint are adequate to state a claim for tortious interference.  Under Florida law, a plaintiff must establish the following elements to prevail on a claim for tortious interference with a business relationship: "(1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)).[9]  "This cause of action requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (quoting *Ethan Allen*, 647 So. 2d at 815).  "[T]he alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights," but "[a] protected business relationship need not be evidenced by an enforceable contract." *Ethan Allen*, 647 So. 2d at 814 (citations omitted).

In Count II, Plaintiff alleges that Defendant interfered with the relationships between Plaintiff and customers of Plaintiff who were insured by Defendant.  Plaintiff alleges that it entered into "estimates for repair also known as work orders or contracts with [these] customers." Amended Complaint ¶ 36.  Defendant allegedly interfered by removing the customers' vehicles

---

[9] "The elements of tortious interference with a contract are substantially similar, replacing 'relationship' with 'contract.'" *AMG Trade & Distribution, LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 406 (11th Cir. 2020) (citation omitted); *see also Ho v. City of Boynton Beach*, No. 22-11542, 2023 WL 2293517, at *2 (11th Cir. Mar. 1, 2023); *Soho Ocean Resort TRS, LLC v. Rutois*, No. 21-11392, 2023 WL 242350, at *2 (11th Cir. Jan. 18, 2023); *CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 21-11183, 2022 WL 3012298, at *5 (11th Cir. July 29, 2022).

9

without their approval or by instructing customers under contract with Plaintiff to use a different repair shop. *Id.* Moreover, Defendant allegedly made false representations to the customers in an effort to steer them away from doing business with Plaintiff. *See id.* ¶¶ 37-44. Defendant's interference allegedly occurred with *at least* three customers of Plaintiff (who are specifically named in the Amended Complaint). *See id.* ¶¶ 40, 45.

In the Motion, Defendant first argues that even if Count II otherwise states a claim, it should be dismissed to the extent it is predicated on any customer relationships between Plaintiff and any customers not specifically named in the Complaint. In other words, Defendant contends that Count II should be dismissed as to "any customer other than [the three customers] identified in paragraph 45" of the Amended Complaint. [DE 27] at 16.

Defendant's first argument is unavailing. It is true, as Defendant notes, that Plaintiff will be required to "prove a business relationship with identifiable customers." *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996). But that does not stand for the proposition that a plaintiff must specifically identify all such customers in a complaint. In fact, binding precedent forecloses – from a federal pleading standpoint – the argument Defendant makes here. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019) (en banc) ("We cannot conclude that the Body Shops' failure to identify particular potential customers who were steered away constitutes a failure to give each defendant fair notice of the claim against it.").[10]

---

[10] *See also Soho Ocean Resort*, 2023 WL 242350, at *3 ("Rule 8's pleading standards do not support the district court's finding that Soho is required, at this time, to 'name[ ] any of the employees Rutois reportedly interfered with' . . . . These details will emerge in discovery."); *Cereceda*, 2020 WL 13220422, at *9 ("[T]o state a claim for tortious interference with a business relationship, a party need only plead 'a business relationship with *identifiable* customers,' not specifically *named* customers."); *Bostwick Lab'ys, Inc. v. Farley*, No. CV 14-60316-CIV, 2014 WL 12580032, at *4 (S.D. Fla. Aug. 1, 2014) (rejecting argument that tortious interference claims

10

Next, Defendant briefly argues that Plaintiff failed to include sufficient allegations to identify the nature of the relationship between Plaintiff and the customers at issue. I disagree. As Defendant recognizes, the customers at issue are customers of Plaintiff – who are also insured by Defendant – with whom Plaintiff entered into "estimates for repair also known as work orders or contracts." Amended Complaint ¶ 36. The allegations thus put Defendant on notice that Plaintiff alleges interference with a particular group of customers (an identifiable group) and not the community at large. Moreover, the factual allegations of the Amended Complaint, viewed in the light most favorable to Plaintiff, plausibly demonstrate that Plaintiff would have in all likelihood been able to move forward with repairing the customers' vehicles had Defendant not interfered.[11] Accordingly, Defendant's argument fails (at least at this stage).

Additionally, Defendant contends that Plaintiff failed to adequately allege unjustified interference. As noted above, the third tortious interference element, "intentional and unjustified interference with a business relationship, requires the plaintiff to allege that 'the defendant acted without justification.'" *Duty Free*, 797 F.3d at 1280 (quoting *Sec. Title Guarantee Corp. of Balt. v. McDill Columbus Corp.*, 543 So. 2d 852, 855 (Fla. 2d DCA 1989)). "This is a fact-intensive inquiry that requires 'an examination of the defendant's conduct, its motive, and the interests it sought to advance.'" *Id.* (quoting *Sec. Title Guarantee Corp.*, 543 So. 2d at 855). Florida does,

---

"must be dismissed because [the plaintiff] did not specifically identify customers whose business was diverted, or with which [the plaintiff] had a contractual relationship" and noting that "[t]hrough discovery, [the defendant] can learn the identity of the companies [the plaintiff] refers to in the First Amended Complaint, as well as the nature and type of business relationship those companies had with [the plaintiff]").

[11] *Cf. A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-CV-310-ORL-31TB, 2015 WL 5604786, at *9 (M.D. Fla. Sept. 23, 2015) ("Given that Niece had already taken her vehicle to Ideal Auto and gotten an estimate, it could be inferred that there was an understanding or agreement between the two that would have been completed had Allstate not interfered.").

however, recognize a "privilege of interference," *id.* – as an affirmative defense. *See Se. Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A.*, 50 So. 3d 21, 24 (Fla. 1st DCA 2010). "Under Florida law, a person with 'any beneficial or economic interest in, or control over,' a contractual relationship is not considered a 'stranger' to the contract and therefore has a 'privilege to interfere' in that relationship." *M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020) (citation omitted).[12] "Being neither a contracting party nor someone acting on behalf of a party, such a person is aptly described as an 'interested third party.'" *Id.* (citation omitted).

Here, the Amended Complaint plainly shows that Defendant fits this "interested third party" description, as it is Defendant who likely will ultimately be obligated to pay for (or provide reimbursement for) repairs to its insureds' vehicles. However, it is not evident from the four corners of the Amended Complaint whether Defendant allegedly interfered in order to protect its own economic interest. That is significant because "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020). Notably, several courts have found it inappropriate to consider at the motion-to-dismiss stage whether the privilege-to-interfere defense applies. *See, e.g.*, *Cereceda*, 2020 WL 13220422, at *10. And that makes sense given the "fact-intensive inquiry" required

---

[12] *See also Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) ("For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship. A defendant is not a stranger to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship. Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." (internal citations and internal quotation marks omitted)).

here. *See Duty Free*, 797 F.3d at 1280; *see also Howard v. Murray*, 184 So. 3d 1155, 1167 (Fla. 1st DCA 2015) (emphasis added) ("[A]ny determination whether a defendant acted without justification is also *highly fact dependent* and requires an examination of the defendant's conduct, its motive, and the interests it sought to advance." (internal quotation marks and citation omitted)).

Moreover, even if the privilege may otherwise apply here, as both parties note, an "improper" means or methods exception to the privilege exists. *See Cereceda*, 2020 WL 13220422, at *10 ("Interested parties may still be held liable if they use improper methods of interference, such as misrepresentations and illegal conduct." (citation omitted) (cleaned up)); *see also Duty Free*, 797 F.3d at 1282 ("Florida law is clear that the privilege of interference encompasses actions taken to protect a company's economic interests as long as the methods employed were not improper." (citations omitted)); *Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2d DCA 1995) ("Where there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper." (citation omitted)). Improper means or methods may include physical violence, intimidation, misrepresentations, illegal conduct, threats, or other improper conduct. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004); *Morsani*, 663 So. 2d at 657; *Ice Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-60230-CIV, 2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010); Fla. Std. Jury Instr. (Civ.) 408.6. Significantly, because privilege is a defense, it is actually a defendant's initial burden to show that it did not use improper means. *See Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 651 (Fla. 4th DCA 2020).

In the Motion, Defendant asserts that Plaintiff attempts to "plead around" the privilege to interfere by alleging misrepresentations and intimidation in the Amended Complaint. [DE 27] at 19. However, according to Defendant, Plaintiff's allegations of improper conduct are "untethered

13

to any specific customer" and run afoul of Rule 9(b). *Id.*; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Notably, Defendant does not cite any binding or persuasive law indicating that a Plaintiff is required to tie or tether specific allegations of improper conduct to specific customers at the pleading stage. And as noted above, binding precedent makes clear that a plaintiff is not required to even specifically identify every customer at issue in a complaint raising a tortious interference claim.

Defendant's Rule 9(b) argument does not warrant dismissal either. Assuming that Rule 9(b) applies to Plaintiff's misrepresentation allegations (i.e., that Plaintiff was required to allege Defendant's misrepresentations with particularity), I find that Plaintiff has included sufficient allegations regarding Defendant's alleged misrepresentations in the Amended Complaint to provide Defendant fair notice of the bases for Plaintiff's claim against Defendant. In Count II, Plaintiff alleges various misrepresentations, including the following: (1) Defendant's adjuster telling customer Joshua Cohen (on or around June 13, 2022) that Plaintiff "can't accept the vehicle" (¶ 39); (2) Defendant's tow truck driver telling Mr. Cohen that Plaintiff was "holding the vehicle hostage" (¶ 39); (3) Defendant stating that Plaintiff had a reputation of providing poor service (¶ 41); (4) statements to customers that Plaintiff was not legally authorized to repair the customers' vehicles (¶ 42); and (5) statements to customers that Plaintiff has quality control issues (¶ 43). Such allegations "permit a plausible inference [Defendant] used improper methods to interfere." *Cereceda*, 2020 WL 13220422, at *10. They are also sufficient to satisfy Rule 9(b) in this context (where Plaintiff need not specifically identify each and every customer at issue). *Cf. ADT LLC v. Alder Holdings, LLC*, No. 17-81237-CIV, 2018 WL 6505915, at *5 (S.D. Fla. Nov. 7, 2018), *report and recommendation adopted*, 2018 WL 6620301 (S.D. Fla. Dec. 4, 2018)

(rejecting argument that pleading was "deficient because it provide[d] only a handful of examples, rather than all instances, of the conduct on which the claim [was] based").[13]

Additionally, Plaintiff alleges that Defendant interfered by removing customer vehicles without customer approval (¶ 36).  This factual allegation, viewed in the light most favorable to Plaintiff, also makes Plaintiff's allegations of improper conduct by Defendant plausible.

For the foregoing reasons, the Motion should be denied as to Count II.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 27] be **GRANTED IN PART and DENIED IN PART**.  Specifically, Count I of the Amended Complaint should be dismissed with prejudice, but the Motion should be denied as to Count II.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this

---

[13] Importantly, "[t]he application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); *see also Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading."); *Okposio v. Barry Univ., Inc.*, No. 22-13845, 2023 WL 7484223, at *3 (11th Cir. Nov. 13, 2023) ("Our rulings require adequate notice, not 'a model of efficiency or specificity.' This is true even where, as here, a plaintiff is confronted by the heightened pleading standard of Rule 9(b) for fraudulent misrepresentation claims." (internal citation omitted)); *State Farm Mut. Auto. Ins. Co. v. Advanced Chiropractic & Med. Ctr. Corp.*, No. 1821127CIVJEMAJ, 2019 WL 2534908, at *3 (S.D. Fla. Mar. 15, 2019) ("Rule 9(b)'s particularity requirements must, however, be read in light of Rule 8's instruction that a complaint need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief' and that each allegation in the complaint 'be simple, concise, and direct.'" (citation omitted)).

Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 10th day of January 2024.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge